UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Weslie Martin,<br><br>    Plaintiff<br><br>v.<br><br>Brian Williams, et al.,<br><br>    Defendants | Case No.: 2:19-cv-01815-JAD-BNW<br><br>**Order Granting Motion for Reconsideration and Screening Complaint**<br><br>[ECF Nos. 1-1, 15] |

Plaintiff Weslie Martin filed this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth Amendment, Fourteenth Amendment, and state-law rights were violated during his incarceration at High Desert State Prison (HDSP). I initially dismissed this action without prejudice[1] because Martin failed to timely update his address with the Clerk's Office. Shortly after I did so, Martin filed a motion for reconsideration. I grant the motion for reconsideration, reopen this case, set aside the judgment, reinstate the application to proceed *in forma pauperis* as active and pending, and screen the complaint under 28 U.S.C. § 1915A. Upon screening, I find that Martin has not pled any constitutional violations, so I dismiss those claims with leave to amend. I dismiss his state-law claims without prejudice to Martin's ability to refile those claims in state court. Because these dismissals leave no viable claims pending, I deny Martin's motion for preliminary injunction.[2] I also deny his request for appointment of counsel because such relief is not warranted here.[3] And finally, I give Martin until January 15, 2021, to amend his Eighth and Fourteenth Amendment claims.

---

[1] ECF No. 13.
[2] ECF No. 1-2.
[3] ECF No. 1-4.

I.  **Motion for Reconsideration [ECF No. 15]**

Martin moves for reconsideration of the dismissal of this case, arguing (1) that I should have known his location because he filed a change of address in a different case with this court, and (2) his change of address in the other case also included this case number.[4] Martin did not include this case number in his notice of change of address in the other case,[5] and it was his responsibility to update the court with his current mailing address in *each* case.[6] Nevertheless, I have evaluated Martin's motion under Federal Rule of Civil Procedure 60(b)(1) and *Pioneer Inv. Servs. Co. v. Brunswick Associates Limited Partnership*,[7] and I find that such relief is warranted.

Under Rule 60(b)(1), a court may relieve a party or its legal representative from a final judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect."[8] In *Pioneer*, the Supreme Court interpreted "neglect" to encompass "both simple, faultless omissions to act and, more commonly, omissions caused by carelessness."[9] In assessing whether a set-side is justified by a party's excusable neglect, courts apply a four-part test: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.[10] I find these factors satisfied here and grant the motion for reconsideration.

---

[4] ECF No. 15.

[5] *See Martin v. Lona*, 2:18-cv-02426-RFB-VCF at ECF No. 23.

[6] *See* L.R. IA 3-1.

[7] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

[8] Fed. R. Civ. P. 60(b)(1).

[9] *Pioneer*, 507 U.S. at 388.

[10] *Id*. at 395.

## II.     Screening standard

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[11] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[12] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[13]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[14] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[15] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[16] but a plaintiff must provide more than mere labels and conclusions.[17] "While legal conclusions can provide the framework of a

---

[11] *See* 28 U.S.C. § 1915A(a).

[12] *See* 28 U.S.C. § 1915A(b)(1)(2).

[13] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[14] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[15] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[16] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

complaint, they must be supported with factual allegations."[18]  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[19]

### III.  Screening Martin's complaint [ECF No. 1-1]

Martin sues Defendants Director James Dzurenda, Warden Brian Williams, Correctional Officer (C/O) Cossman, Sgt. C/O Berry, C/O Rangel, HDSP medical director George Traino, Senior C/O Martinez, and Sgt. C/O Dugan for events that he claims took place while he was incarcerated at HDSP.[20]  He alleges three claims and seeks monetary relief.[21]

Martin bases his claims on the following allegations, which are merely a summary of the information he has stated in the complaint and not findings of fact: On September 23, 2019, Martin ate contaminated food that caused him to have diarrhea and stomach pain, and to "actively" throw up.[22]  He requested an emergency grievance from C/O Cossman, but Cossman denied Martin both emergency and informal grievances.[23]  Cossman responded that Martin was lying about his symptoms even after Cossman heard the radio call stating that the food was contaminated.[24]  Several C/Os smelled the food and thought it reeked of urine or chemicals and commented that the food looked discolored or spoiled.[25]

---

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
[19] *Id.*
[20] ECF No. 1-1 at 1.
[21] *Id.* at 7, 10.
[22] *Id.* at 1, 5.
[23] *Id.* at 5.
[24] *Id.*
[25] *Id.*

After Cossman's shift change, Martin contacted Senior C/O Martinez to inform him that Cossman had denied Martin the right to grieve and that C/O Rangel failed to contact medical after Martin pushed the emergency call button.[26] Martinez told Martin that in order to get medical attention, Martin would have to pay $85 for a man down. Cossman's actions caused Martin emotional distress.[27]

Sgt. C/O Dugan responded to the man down.[28] After listening to Martin's explanation of the events, Dugan affirmed the $85 and told Martin that he was "not worried about the grievance process, I'm worried about your health."[29] Martin tried to argue that the grievance process was important, but Dugan denied him the right to grieve.[30] Martin showed Dugan and Martinez the breakfast trays.[31]

After prison officials took Martin and his cellmate to medical, Martin received "no care."[32] However, Martin's cellmate received a shot and medication even though both of them had the same symptoms and saw the same nurse.[33] After Martin returned to his cell, it took two weeks for his "symptoms" to go away. In contrast, Martin's cellmate was better in a couple of days.

A week after the incident, Sgt. C/O Berry told Martin and the other inmates that the food had been cooked improperly and poorly but that it had not been urinated in or contaminated with

---

[26] *Id.*
[27] *Id.*
[28] *Id.* at 6.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*

chemicals.[34] The following day, Warden Williams visited the unit and told the inmates that the food was not cooked poorly or contaminated but instead had been a bad product from the suppliers.[35] Martin informed the warden that general-population inmates should not have to eat food made by protective-custody inmates.[36] Williams responded, "so what, it's not changing."[37]

Martin is afraid to eat any meals due to what happened.[38] Martin and his unit boycott breakfast because the protective-custody inmates serve it seven days a week. Martin heard that protective-custody inmates were going to be permanently serving dinner starting in November.

In claim 1, Martin alleges negligence, denial of the grievance process, due process violations, deliberate indifference, a right to eat clean and healthy food, enforcing unwritten policies, and emotional distress. In claim 2, Martin alleges denial of the grievance process, deliberate indifference, negligence, and enforcing unwritten policies. In claim 3, he alleges aiding and abetting to create confusion and to cover up a scandal, and cruel and unusual punishment. I liberally interpret these allegations as claims for Eighth Amendment conditions-of-confinement violations for inadequate food; Eighth Amendment deliberate indifference to serious medical needs; Fourteenth Amendment denial of access to the grievance procedure; Eighth Amendment unsafe-prison-conditions claims; and state-law claims for negligence and emotional distress.

---

[34] *Id.* at 1, 7.
[35] *Id.*
[36] *Id.* at 7.
[37] *Id.*
[38] *Id.*

### A. Conditions of Confinement

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[39] Conditions of confinement may, consistent with the Constitution, be restrictive and harsh.[40] However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."[41] When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment.[42] "[T]he deprivation alleged must be, objectively, sufficiently serious" and "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."[43] For the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation.[44] When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition.[45]

"The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing."[46] "The fact that the food

---

[39] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).
[40] *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).
[41] *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).
[42] *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981).
[43] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted).
[44] *Id.*
[45] *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).
[46] *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).

7

occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."[47]

For screening purposes, I find that Martin states a colorable conditions of confinement claim based on inadequate food but I grant him leave to amend to identify who he is suing for this violation. He alleges that several C/Os acknowledged that the food was contaminated, smelled like chemicals or urine, and looked discolored or spoiled. Martin asserts that he became ill with diarrhea and stomach pain and threw up due to the contaminated food. Although I liberally construe the allegations as demonstrating that the food was inadequate to maintain health, none of the C/Os that Martin identifies were responsible for preparing and serving the contaminated food.[48] So I dismiss this claim without prejudice with leave to amend if Martin can identify an employee responsible for the condition of the food.

### B. Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"[49] A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.[50] "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious

---

[47] *Id.*

[48] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant").

[49] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

[50] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[51]

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[52] To satisfy the deliberate-indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."[53] "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."[54] When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury.[55]

I find that Martin fails to state a colorable claim for deliberate indifference to serious medical needs, but I grant him leave to amend. If Martin chooses to amend, he must identify his serious medical needs and explain what his "symptoms" were that endured for two weeks. Additionally, Martin needs to identify which prison officials were aware of his medical needs over the two-week period and describe how each specific defendant denied, delayed, or intentionally interfered with his medical treatment. Additionally, if Martin is attempting to sue a specific medical nurse for how that nurse treated Martin's symptoms, Martin needs to identify

---

[51] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

[52] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

[53] *Id*.

[54] *Id*. (internal quotations omitted).

[55] *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

9

that specific individual by name and describe his conversation with the nurse and the nurse's reasons for failing to provide Martin with "no care."

### C. Denial of Access to the Grievance Procedure

Prisoners have a constitutional right of access to the courts,[56] which includes access to prison grievance procedures.[57] To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered "actual injury."[58] The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."[59]

I find that Martin fails to allege a colorable claim for denial of access to the grievance process. Martin has not demonstrated that a nonfrivolous legal claim had been frustrated or was being impeded. So I dismiss this claim without prejudice with leave to amend if Martin can supply facts to cure these deficiencies.

### D. Unsafe Prison Conditions

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.[60] The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[61] The Eighth Amendment

---

[56] *Lewis v. Casey*, 518 U.S. 343, 346 (1996).

[57] *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).

[58] *Id.* at 349.

[59] *Id.* at 353.

[60] *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

[61] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care.[62]

To establish violations of these duties, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety.[63] To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[64] Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed.[65]

I find that Martin fails to allege a colorable claim for unsafe prison conditions based on the protected-custody inmates preparing his food. Although Martin alleges that he notified Warden Williams that he should not have to eat food prepared by protective-custody inmates, Martin has not alleged any facts demonstrating that this practice causes an excessive risk to inmate safety or that a substantial risk of serious harm exists. I dismiss this claim without prejudice and with leave to amend if Martin can plead true facts to cure this deficiency.

### E. State Law Claims

Finally, I address Martin's state-law claims for negligence and emotional distress. Unfortunately for Martin, the law prohibits him from pursuing these state tort-law claims in federal court. NRS 41.0337 states that no Nevada state tort action may be brought against a

---

[62] *Farmer*, 511 U.S. at 832.
[63] *Id*. at 834.
[64] *Id*. at 837.
[65] *Id*. at 843.

11

person who is named as a defendant solely because of an act or omission relating to the public duties or employment of an officer or employee of the state or political subdivision unless the state or appropriate political subdivision is "named a party defendant under NRS 41.031." Because of this rule, the State of Nevada is an indispensable party in such a tort claim—which means that Martin can't sue these prison employees and representatives for negligence and emotional distress unless he sues the State of Nevada, too.[66] But Martin can't sue the State of Nevada in federal court (he has to do it in Nevada state court) because the state has not waived its Eleventh Amendment sovereign immunity from suit in federal court.[67] So, any tort claims that Martin seeks to bring based on the facts alleged in the complaint must be brought in state court, not federal court.[68] I therefore dismiss all the state-law tort claims without prejudice and without leave to amend. If Martin wishes to pursue such claims, he must file them in state court.

**IV.    Motion for Preliminary Injunction [ECF No. 1-2]**

Martin has filed a motion for preliminary injunction based on the allegations in the complaint.[69] Injunctive relief, whether temporary or permanent, is an "extraordinary remedy,

---

[66] *Cf. Craig v. Donnelly*, 439 P.3d 413, 415 (Nev. Ct. App. 2019) (holding that court was required under NRS 41.031 and NRS 41.0337 to dismiss state tort claims because plaintiff had not included the State of Nevada as a defendant); *see also Nunnelley v. Douglas Cty.*, 622 F. Supp. 124, 126 (D. Nev. 1985) (indicating that, under NRS 41.031, county that employed alleged tortfeasor was indispensable party).

[67] *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (recognizing that, under the Eleventh Amendment, a state or its agencies cannot be sued in federal court without the state's consent and Nevada explicitly has refused to waive its Eleventh Amendment immunity).

[68] *See Hirst v. Gertzen*, 676 F.2d 1252, 1263–65 (9th Cir. 1982) (holding that, where Montana state law deemed governmental entity to be an indispensable party in any negligence action brought against its employee, the federal court had no supplemental jurisdiction over the state law claim if it had no jurisdiction over the indispensable party); *Nunnelley*, 622 F. Supp. at 126 (absent federal jurisdiction over county, the federal court had no jurisdiction over county on the supplemental state claims).

[69] ECF No. 1-2.

never awarded as of right."[70]  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[71]  The Prison Litigation Reform Act (PLRA) requires preliminary injunctive relief for prisoners to be "narrowly drawn," to "extend no further than necessary to correct the harm," and to be "the least intrusive means necessary to correct the harm."[72]  I deny the motion for preliminary injunction because Martin has not stated any colorable claims and he fails to establish a likelihood of success on the merits.

## V. Motion for Appointment of Counsel [ECF No. 1-4]

Like many prisoners who file civil-rights claims, Martin asks the court to find and appoint a free lawyer.[73]  A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights claims.[74]  The statute that governs this type of litigation, 28 U.S.C. § 1915(e)(1), provides that "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances."[75]  "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'"[76]  "Neither

---

[70] *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008).

[71] *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

[72] 18 U.S.C. § 3626(a)(2).

[73] ECF No. 1-4.

[74] *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).

[75] *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action).

[76] *Id.*

of these considerations is dispositive and instead must be viewed together."[77]  Because I do not find exceptional circumstances here, I deny the motion to appoint counsel.[78]

## VI.  Leave to amend

Finally, I grant Martin leave to amend his claims for conditions-of-confinement violations for inadequate food, deliberate indifference to serious medical needs, denial of access to the grievance procedure, and unsafe prison conditions.  If Martin chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself.[79]  He must file the amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint."  Martin must follow the instructions on the form.  He need not and should not allege very many facts in the "nature of the case" section of the form.  Rather, in each claim, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights.  **He must file the amended complaint by January 15, 2021.**

## Conclusion

IT IS THEREFORE ORDERED that the motion for reconsideration **[ECF No. 15] is GRANTED.**  The Clerk of the Court is directed to **VACATE** the dismissal order (ECF No. 13) and judgment (ECF No. 14); **REOPEN** this case; **REINSTATE** the application to proceed *in*

---

[77] *Id.*

[78] ECF No. 1-4.

[79] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

*forma pauperis* (ECF No. 10) as an active, pending motion, and **FILE** the complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that **all claims are DISMISSED without prejudice and with leave to amend** the claims for Eighth Amendment conditions of confinement violations for inadequate food, Eighth Amendment deliberate indifference to serious medical needs, Fourteenth Amendment denial of access to the grievance procedure, and Eighth Amendment unsafe prison conditions.

IT IS FURTHER ORDERED that **the Clerk of the Court is directed to SEND** Martin the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his original complaint (ECF No. 1-1). If Martin chooses to file an amended complaint, he must use the approved form and he shall write the words "First Amended" above the words "Civil Rights Complaint" in the caption. The amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>. If Martin does not file an amended complaint by January 15, 2021, I will dismiss this action with prejudice for failure to state a claim.** I defer a decision on the application to proceed *in forma pauperis* (ECF No. 10) until after this deadline passes.

IT IS FURTHER ORDERED that the motion for preliminary injunction **[ECF No. 1-2] is denied.**

IT IS FURTHER ORDERED that the motion for appointment of counsel **[ECF No. 1-4] is denied.**

Dated: December 14, 2020

_____
U.S. District Judge